SQUIRE SANDERS (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
(212) 872-9800
Robert A. Wolf, Esq.
(robert.wolf@squiresanders.com)
Andrea K. Fisher
(andrea.fisher@squiresanders.com)

*Special Litigation Counsel to the*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**GREGORY LANE MAIDMAN,**<br><br>**Debtor.** | **Chapter 7**<br><br>**Case No. 11-12497 (MG)** |
| **ROBERT L. GELTZER, as Chapter 7 Trustee of GREGORY LANE MAIDMAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RICHARD MAIDMAN, MITCHEL MAIDMAN, DAVID MAIDMAN, PATRICK MAIDMAN, DAGNY MAIDMAN, RANDI MAIDMAN, WENDY MAIDMAN, R&D MAIDMAN FAMILY, LTD. PARTNERSHIP and MAIDMAN & MITTELMAN LLP,**<br><br>**Defendants.** | **Adversary Proceeding No.**<br><br>**<u>COMPLAINT</u>** |

Robert L. Geltzer, as Chapter 7 trustee (the "Trustee") of Gregory Lane Maidman (the "Debtor"), by his Special Litigation Counsel, Squire Sanders (US) LLP, as and for his Complaint, alleges as follows against the above-captioned defendants (collectively, "Defendants"), based upon information and belief acquired from, among other things,

(i) available documents and records of the Debtor; (ii) publicly available documents, (iii) testimony given by the Debtor and the Defendant Richard Maidman in their Bankruptcy Rule 2004 examinations in this bankruptcy case conducted on behalf of the Trustee by his Special Litigation Counsel, and (iv) and other documentation provided to the Trustee and his professionals pertaining to the allegations contained herein):

## NATURE OF THE ACTION

1. By the instant adversary proceeding, the Trustee seeks:

(a) to recover damages for breaches of fiduciary duties by Defendants Richard Maidman and Mitchel Maidman;

(b) to recover damages for breaches of various written agreements committed by Defendant Richard Maidman;

(c) to avoid and/or to recover the value of various fraudulent conveyances made to the respective Defendants;

(d) to have this Court order Defendants Mitchel Maidman and Maidman & Mittelman LLP to provide an accounting to the Trustee of the Debtor's share of the outstanding net profits of Maidman & Mittelman LLP not previously paid to the Debtor, and to turn over the entirety of such share of those outstanding net profits to the Trustee; and

(e) to obtain related relief.

## PROCEDURAL BACKGROUND

2. On May 24, 2011 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 petition for relief under Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

3. On or about May 25, 2011, the Trustee was appointed interim Trustee of the Debtor. He subsequently became permanent Trustee pursuant to Section 702(d) and by operation of law, and has been acting and continues to act as such Trustee

## THE PARTIES

4. The Trustee is a resident of the State of New York, is a licensed attorney, and as set forth above, is the Chapter 7 Trustee of the Debtor, maintaining an office at 1556 Third Avenue, Suite 505, New York, New York 10128.

5. The Debtor, Gregory Lane Maidman, is an individual whose last known address is 435 East 86th Street, New York, New York 10028.

6. At all times relevant hereto, Defendant Richard Maidman ("Defendant Richard") was and is the Debtor's uncle, having a last known address of 70 East 55th Street, New York, New York 10022.

7. At all times relevant hereto, Defendant Mitchel Maidman ("Defendant Mitchel") was and is the son of Defendant Richard and a first cousin of the Debtor, having a last known address of Steamboat Landing, Sands Point, New York 11050.

8. At all times relevant hereto, Defendant David Maidman ("Defendant David") was and is the father of the Debtor, having a last known address of 845 United Nations Plaza, New York, New York 10017.

9. At all times relevant hereto, Defendant Patrick Maidman ("Defendant Patrick") was and is Defendant Richard's son and a cousin of the Debtor, having a last known address of 93 Windy Hollow Way, Cumberland, Maine 04021.

10. At all times relevant hereto, Defendant Dagny Maidman ("Defendant Dagny") was and is Defendant Richard's daughter and a cousin of the Debtor, having a last known address of 1765 Vellejo Street, #8, San Francisco, California 94123-5017.

11. At all times relevant hereto, Defendant Randi Maidman ("Defendant Randi") was and is a sister of the Debtor, having a last known address of 311 East 83rd Street, #B, New York, New York 10028.

12. At all times relevant hereto, Defendant Wendy Maidman ("Defendant Wendy") was and is a sister of the Debtor, having a last known address of 827 23rd Street, Santa Monica, California 90403.

13. At all times relevant hereto, Defendant R&D Maidman Family Ltd. Partnership ("Defendant R&D") was and is a New York limited partnership having a last known address of 70 East 55th Street, New York, New York 10022.

14. At all times relevant hereto, Defendant Maidman & Mittelman LLP was and is a law firm organized as a New York limited liability partnership having a last known address of 70 East 55th Street, New York, New York 10022.

**JURISDICTION AND VENUE**

15. The United States District Court for the Southern District of New York (the "District Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. By virtue of 28 U.S.C. § 157(a) and the Amended Standing Order of Reference dated January 31, 2012 of Chief Judge Loretta A. Preska of the District Court, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

16. This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b)(2)(A) and (H). Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28 U.S.C. § 157(b) to hear and determine this adversary proceeding. The Trustee consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties herein, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

17. The predicates for the relief sought herein are §§ 541, 542, 544, 548 and 550 of the Bankruptcy Code, §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and the common law of the State of New York.

18. Venue of the subject Chapter 7 case and of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

### The Maidman Family Real Estate Interests

19. At all times relevant hereto, and as of the Petition Date, the Debtor, along with various of the Defendants, had partnership, membership and/or other interests in various real estate entities operated by and/or on behalf of members of the Maidman family (the "Maidman Real Estate Entities"). The Maidman Real Estate Entities owned and/or managed various real estate assets, including, without limitation, residential and/or mixed use buildings, condominium and cooperative apartment units, and parking garages, primarily located in New York City, with aggregrate values in the millions of dollars.

20. At all times relevant hereto, Defendant Richard was the managing partner, managing member, and/or controlling person of the Maidman Real Estate Entities, and in such capacities, owed fiduciary duties to each of the other partners, members and interest holders of those entities, including the Debtor.

21. In addition to having partnership, membership and/or other interests in various Maidman Real Estate Entities, from in or about 1996 to in or about February, 2010, the Debtor worked for Fashion Wear Realty Co., Inc. d/b/a Townhouse Management ("Townhouse Management"), another Maidman Real Estate Entity, in connection with its management of the numerous properties owned by the Maidman Real Estate Entities, and in his capacity as an

attorney, performed various in-house legal services on behalf of Townhouse Management and the Maidman Real Estate Entities.

**The Unjustified Reduction of the Debtor's Percentage**
**Interests in the Maidman Real Estate Entities**

22. In 2010, Defendant Richard, as managing partner, managing member and/or controlling person of the Maidman Real Estate Entities, intentionally, knowingly, and without justification therefor, and contrary to the terms of the applicable legal documents governing the rights and obligations of the holders of ownership interests in the Maidman Real Estate Entities (the "Governing Documents") and contrary to applicable law, caused there to be substantial reductions of the Debtor's percentage ownership interests in various Maidman Real Estate Entities from what those percentage interests had been in 2009.

23. The aforesaid unjustified reductions in 2010 of the Debtor's percentage ownership interests in various Maidman Real Estate Entities from what those percentage interests had been in 2009, included the following[1]:

| Entity | 2009 % Interest | 2010 % Interest |
|---|---|---|
| Amsterdam Apartments Manager LLC | 25.50% | 2.125% |
| Maidman Cousins Holding Co. LLC | 16.67% | 1.3891667% |
| R&D Maidman Family Ltd Partnership | .75% | .0625% |

1 The list of Maidman Real Estate Entities set forth in this paragraph and in other paragraphs of this Complaint may not be inclusive of all Maidman Real Estate Entities in which the Debtor's percentage ownership interests were reduced, and simultaneously, as further alleged herein, the Defendants' respective interests were increased pro rata. The Trustee's claims against the Defendants in this Complaint are intended to encompass each of the Maidman Real Estate Entities in which the Debtor's percentage interests were reduced and the Defendants' respective interests were increased. Furthermore, the Trustee reserves the right to amend this Complaint and/or to proffer evidence at trial with respect to each of the Maidman Real Estate Entities not explicitly listed in this Complaint as to which the foregoing occurred.

| | | |
|---|---|---|
| Wm. Maidman Family Ltd. Partnership | 6.75% | .05625% |
| Maidman Family Parking LP | 11.95% | .9958333% |
| 556 Condo Holding Corp. | 3.688963% | .307414% |
| 22nd Street Surplus Holding Company, LP | .75% | .0625% |

24. Copies of the 2009 and 2010 K-1 tax forms issued to the Debtor evidencing the above–listed percentage interest reductions (the "Debtor K-1's") are annexed hereto collectively as Exhibit 1. The patent impropriety of the reductions of the Debtor's ownership interests in the Maidman Real Estate Entities can be seen by, among other things, comparing the Debtor's ending percentage interests therein reported on the 2009 Debtor K-1's with the beginning percentage interests reported on the 2010 Debtor K-1's. Whereas a proper K-1 tax form would set forth a beginning of the year percentage interest that was identical to the ending of the year percentage interest reported on the K-1 form for the immediately preceding year, the beginning percentage interests reported on the 2010 Debtor K-1's are the above-listed allegedly reduced percentage interests of the Debtor, at improper variance with the significantly higher ending percentage interests set forth above that were reported on the 2009 Debtor K-1's.

**The Simultaneous Improper Transfers to Defendants of the Percentage Amounts By Which the Debtor's Interests in the Maidman Real Estate Entities Had Been Reduced**

25. Also in 2010, simultaneously with his improperly causing the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused the amounts by which the Debtor's aforesaid percentage interests were reduced improperly (the "Debtor Reduction Amounts") to be redistributed pro rata to the Defendants, including, without limitation, as set forth in detail below.

### *The Richard Transfers*

26. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain of those Maidman Real Estate Entities to be transferred to himself (collectively, the "Richard Transfers"), so that Defendant Richard's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| Entity | 2009 % Interest | 2010 % Interest |
|---|---|---|
| R&D Maidman Family Ltd. Partnership | 45.75% | 46.09375% |
| Wm. Maidman Family Ltd. Partnership | 16.78% | 20.126875% |
| Maidman Family Parking LP | 13.90% | 19.3770833% |
| 556 Condo Holding Corp. | 42.561574% | 44.252349% |
| 22nd Street Surplus Holding Company, LP | 45.75% | 46.09375% |

27. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant Richard evidencing the above (the "Richard K-1's") are annexed hereto collectively as Exhibit 2. The patent impropriety of the increases of Defendant Richard's ownership interests in the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage interests therein reported on the 2009 Richard K-1's with the beginning-of-year percentage interests reported on the 2010 Richard K-1's. Specifically, the beginning of the year percentage interests reported on the 2010 Richard K-1's are Defendant Richard's allegedly increased

percentage interests, at improper variance with the lower end-of-year percentage interests set forth above that were reported on the 2009 Richard K-1's.

***The Mitchel Transfers***

28. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain of those Maidman Real Estate Entities to be transferred to Defendant Mitchel (collectively, the "Mitchel Transfers"), so that Defendant Mitchel's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| Entity | 2009 % Interest | 2010 % Interest |
|---|---|---|
| Amsterdam Apartments Manager LLC | 25.50% | 31.460625% |
| Maidman Cousins Holding Co. LLC | 16.67% | 19.7221667% |

29. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant Mitchel evidencing the above (the "Mitchel K-1's") are annexed hereto collectively as Exhibit 3. The patent impropriety of the increases of Defendant Mitchel's ownership interests in the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage interests therein reported on the 2009 Mitchel K-1's with the beginning-of-year percentage interests reported on the 2010 Mitchel K-1's. Specifically, the beginning of the year percentage interests reported on the 2010 Mitchel K-1's are Defendant Mitchel's above-listed allegedly

increased percentage interests, at improper variance with the lower end-of-year percentage interests set forth above that were reported on the 2009 Richard K-1's.

***The David Transfers***

30. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain of those Maidman Real Estate Entities to be transferred to Defendant David (collectively, the "David Transfers"), so that Defendant David's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| Entity | 2009 % Interest | 2010 % Interest |
| --- | --- | --- |
| R&D Maidman Family Ltd. Partnership | 46.75% | 47.09375% |
| Wm. Maidman Family Ltd. Partnership | 17.78% | 21.126875% |
| Maidman Family Parking LP | 14.00% | 19.4770833% |
| 556 Condo Holding Corp. | 42.561574% | 44.252349% |
| 22nd Street Surplus Holding Company, LP | 46.75% | 47.09375% |

31. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant David evidencing the above (the "David K-1's") are annexed hereto collectively as Exhibit 4. The patent impropriety of the increases of Defendant David's ownership interests in the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage

interests therein reported on the 2009 David K-1's with the beginning-of-year percentage interests reported on the 2010 David K-1's. Specifically, the beginning of the year percentage interests reported on the 2010 David K-1's are Defendant David's above-listed allegedly increased percentage interests, at improper variance with the lower end-of-year percentage interests set forth above that were reported on the 2009 David K-1's.

***The Patrick Transfers***

32. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain of those Maidman Real Estate Entities to be transferred to Defendant Patrick (collectively, the "Patrick Transfers"), so that Defendant Patrick's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| Entity | 2009 % Interest | 2010 % Interest |
|---|---|---|
| Maidman Cousins Holding Co. LLC | 16.67% | 19.7221667% |

33. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant Patrick evidencing the above (the "Patrick K-1's") are annexed hereto collectively as Exhibit 5. The patent impropriety of the increase of Defendant Patrick's ownership interest in at least one of the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage interest therein reported on the 2009 Patrick K-1 with the beginning-of-year percentage interest reported on the 2010 Patrick K-1. Specifically, the beginning of the year

percentage interest reported on the 2010 Patrick K-1 is Defendant Patrick's above-listed allegedly increased percentage interest, at improper variance with the lower end-of-year percentage interest set forth above that was reported on the 2009 Patrick K-1.

### *The Dagny Transfers*

34. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain those Maidman Real Estate Entities to be transferred to Defendant Dagny (collectively, the "Dagny Transfers"), so that Defendant Dagny's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| **Entity** | **2009 % Interest** | **2010 % Interest** |
|---|---|---|
| Maidman Cousins Holding Co. LLC | 16.67% | 19.7221666% |

35. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant Dagny evidencing the above (the "Dagny K-1's") are annexed hereto collectively as Exhibit 6. The patent impropriety of the increase of Defendant Dagny's ownership interest in at least one of the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage interest therein reported on the 2009 Dagny K-1 with the beginning-of-year percentage interest reported on the 2010 Dagny K-1. Specifically, the beginning of the year percentage interest reported on the 2010 Dagny K-1 is Defendant Dagny's above-listed allegedly

increased percentage interest, at improper variance with the lower end-of-year percentage interest set forth above that was reported on the 2009 Dagny K-1.

***The Randi Transfers***

36. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain of those Maidman Real Estate Entities to be transferred to Defendant Randi (collectively, the "Randi Transfers"), so that Defendant Randi's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| **Entity** | **2009 % Interest** | **2010 % Interest** |
|---|---|---|
| Maidman Cousins Holding Co. LLC | 16.66% | 19.7221667% |

37. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant Randi evidencing the above (the "Randi K-1's") are annexed hereto collectively as Exhibit 7. The patent impropriety of the increase of Defendant Randi's ownership interest in at least one of the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage interest therein reported on the 2009 Randi K-1 with the beginning-of-year percentage interest reported on the 2010 Randi K-1. Specifically, the beginning of the year percentage interest reported on the 2010 Randi K-1 is Defendant Randi's above-listed allegedly increased percentage interest, at improper variance with the lower end-of-year percentage interest set forth above that was reported on the 2009 Randi K-1.

### *The Wendy Transfers*

38. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain of those Maidman Real Estate Entities to be transferred to Defendant Wendy (collectively, the "Wendy Transfers"), so that Defendant Wendy's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| Entity | 2009 % Interest | 2010 % Interest |
|---|---|---|
| Maidman Cousins Holding Co. LLC | 16.66% | 19.7221666% |

39. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant Wendy evidencing the above (the "Wendy K-1's") are annexed hereto collectively as Exhibit 8. The patent impropriety of the increase of Defendant Wendy's ownership interest in at least one of the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage interest therein reported on the 2009 Wendy K-1 with the beginning-of-year percentage interest reported on the 2010 Wendy K-1. Specifically, the beginning of the year percentage interest reported on the 2010 Wendy K-1 is Defendant Wendy's above-listed allegedly increased percentage interest, at improper variance with the lower end-of-year percentage interest set forth above that was reported on the 2009 Wendy K-1.

***The R&D Transfers***

40. Simultaneously with his improperly causing in 2010 the Debtor's percentage ownership interests in various Maidman Real Estate Entities to be reduced, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused portions of the Debtor Reduction Amounts with respect to certain of those Maidman Real Estate Entities to be transferred to Defendant R&D (collectively, the "R&D Transfers"), so that Defendant R&D's respective percentage interests in those Maidman Real Estate Entities increased from 2009 to 2010, including, without limitation, as follows:

| **Entity** | **2009 % Interest** | **2010 % Interest** |
|---|---|---|
| Amsterdam Apartments Manager LLC | 49% | 66.414375% |

41. Copies of the 2009 and 2010 K-1 tax forms issued to Defendant R&D evidencing the above (the "R&D K-1's") are annexed hereto collectively as Exhibit 9. The patent impropriety of the increases of Defendant R&D's ownership interest in at least one of the Maidman Real Estate Entities can be seen by, among other things, comparing the end-of-year percentage interest therein reported on the 2009 R&D K-1 with the beginning-of-year percentage interest reported on the 2010 R&D K-1. Specifically, the beginning of the year percentage interest reported on the 2010 R&D K-1 is Defendant R&D's above-listed allegedly increased percentage interest, at improper variance with the lower end-of-year percentage interest set forth above that was reported on the 2009 R&D K-1.

**Profits and Accounting Owed to the Debtor by**
**<u>Defendant Law Firm Maidman & Mittelman</u>**

42. In or about September, 1996 the Debtor and Defendant Mitchel formed the law firm Maidman & Mittelman LLP ("Defendant Law Firm").

43. The Debtor and Defendant Mitchel were equal general partners of Defendant Law Firm, sharing in the net profits of Defendant Law Firm on a 50-50 basis.

44. Defendant Law Firm served both as in-house counsel for the Maidman Real Estate Entities, and as outside counsel for various clients.

45. Among the outside clients for whom Defendant Law Firm performed legal services was Amsterdam Apartments, whose principal was Richard Mack. The Debtor was the partner at Defendant Law Firm who had the relationship with Amsterdam Apartments and Richard Mack and was responsible for bringing them into the firm as clients.

46. Commencing no later than 2009, and continuing through in or about 2011, the client Amsterdam Apartments paid Defendant Law Firm in excess of $200,000 per year for legal services rendered on Amsterdam Apartment's behalf, which services consisted primarily of landlord-tenant work, including litigation.

47. The Debtor withdrew from Defendant Law Firm in or about February, 2010. At or about that time, and subsequently thereto, the Debtor made demand of Defendant Mitchel and Defendant Law Firm for an accounting of the net profits earned by Defendant Law Firm and for turnover to the Debtor of Debtor's share of those net profits owing to the Debtor, including Debtor's share of such profits earned from legal service payments made by Amsterdam Apartments and Richard Mack, the clients whom the Debtor was responsible for bringing into the firm.

48. Notwithstanding the aforesaid demands by the Debtor, Defendant Mitchel, in breach of his fiduciary duties as a general partner of Defendant Law Firm, and Defendant Law Firm, never provided the Debtor with the demanded accounting, nor did Defendant Mitchel or Defendant Law Firm turn over to the Debtor the latter's share of the net profits of Defendant Law Firm owing to the Debtor.

## COUNT ONE

## CLAIM FOR BREACH OF FIDUCIARY DUTIES
**(as against Defendant Richard)**

49. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

50. In his capacities as the managing partner, managing member and/or controlling person of the Maidman Real Estate Entities, Defendant Richard owed fiduciary duties to each of the other partners, members and interest holders of those entities, including the Debtor, to exercise the care, diligence, good faith and compliance with the terms of the Governing Documents and applicable law governing the rights and obligations of himself and each of the other partners, members and interest holders, that an ordinarily prudent person in like positions would exercise.

51. In 2010, in breach of his aforesaid fiduciary duties, Defendant Richard intentionally, knowingly, and without justification therefor, and contrary to the Governing Documents and contrary to applicable law, caused the aforesaid substantial reductions of the Debtor's percentage ownership interests in the various Maidman Real Estate Entities to be substantially reduced as aforesaid from what those percentage interests had been in 2009, to the Debtor's substantial economic detriment.

52. By virtue of Defendant Richard's breaches of his fiduciary duties to the Debtor as aforesaid, the Trustee is entitled to a judgment on behalf of the Debtor's estate against Defendant Richard in an amount to be determined at trial, currently estimated to be in excess of $1,000,000.00, together with interest thereon.

## COUNT TWO

## CLAIM FOR BREACHES OF GOVERNING DOCUMENTS
**(as against Defendant Richard)**

53. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

54. Defendant Richard's intentional, knowing and unjustified actions in causing the aforesaid reductions in 2010 of Debtor's percentage ownership interests in the various Maidman Real Estate Entities constituted breaches on Defendant Richard's part of his obligations and of the Debtor's rights under the Governing Documents applicable to those Maidman Real Estate Entities, thereby causing the Debtor to incur substantial damages.

55. By virtue of Defendant Richard's breaches of the Governing Documents as aforesaid, the Trustee is entitled to a judgment on behalf of the Debtor's estate against Defendant Richard in an amount to be determined at trial, currently estimated to be in excess of $1,000,000.00, together with interest thereon.

## COUNT THREE

## AVOIDANCE AND RECOVERY OF THE RICHARD TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a) (1)(B) and 550(a)
**(as against Defendant Richard)**

56. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

57. At the time Defendant Richard caused the Richard Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

58. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee may avoid the Richard Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Richard the value of the Richard Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

**COUNT FOUR**

**AVOIDANCE AND RECOVERY OF THE RICHARD TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(b) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW**
**(as against Defendant Richard)**

59. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

60. The Richard Transfers were made without fair consideration.

61. The Richard Transfers were not made in good faith or honestly, fairly, and openly.

62. At the time the Richard Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

63. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275, and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Richard Transfers, and pursuant

to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Richard the value of the Richard Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT FIVE

## AVOIDANCE AND RECOVERY OF THE MITCHEL TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) and 550(a) (as against Defendant Mitchel)

64. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

65. At the time Defendant Richard caused the Mitchel Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

66. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee may avoid the Mitchel Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Mitchel the value of the Mitchel Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT SIX

## AVOIDANCE AND RECOVERY OF THE MITCHEL TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(B) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW (as against Defendant Mitchel)

67. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

68. The Mitchel Transfers were made without fair consideration.

69. The Mitchel Transfers were not made in good faith or honestly, fairly, and openly.

70. At the time the Mitchel Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

71. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275, and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Mitchel Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Mitchel the value of the Mitchel Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT SEVEN

## AVOIDANCE AND RECOVERY OF THE DAVID TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) and 550(a) (as against Defendant David)

72. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

73. At the time Defendant Richard caused the David Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

74. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee may avoid the David Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant David the value of the David Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT EIGHT

## AVOIDANCE AND RECOVERY OF THE DAVID TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(B) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW

**(as against Defendant David)**

75. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

76. The David Transfers were made without fair consideration.

77. The David Transfers were not made in good faith or honestly, fairly, and openly.

78. At the time the David Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

79. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the David Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant David the value of the David

Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

**COUNT NINE**

**AVOIDANCE AND RECOVERY OF THE PATRICK TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) and 550(a)**
**(as against Defendant Patrick)**

80. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

81. At the time Defendant Richard caused the Patrick Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

82. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee may avoid the Patrick Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Patrick the value of the Patrick Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

**COUNT TEN**

**AVOIDANCE AND RECOVERY OF THE PATRICK TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(B) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW**
**(as against Defendant Patrick)**

83. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

84. The Patrick Transfers were made without fair consideration.

85. The Patrick Transfers were not made in good faith or honestly, fairly, and openly.

86. At the time the Patrick Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

87. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Patrick Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Patrick the value of the Patrick Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT ELEVEN

## AVOIDANCE AND RECOVERY OF THE DAGNY TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) and 550(a) (as against Defendant Dagny)

88. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

89. At the time Defendant Richard caused the Dagny Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

90. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B)), the Trustee may avoid the Dagny Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant

Dagny the value of the Dagny Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT TWELVE

## AVOIDANCE AND RECOVERY OF THE DAGNY TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(B) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW

**(as against Defendant Dagny)**

91. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

92. The Dagny Transfers were made without fair consideration.

93. The Dagny Transfers were not made in good faith or honestly, fairly, and openly.

94. At the time the Dagny Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

95. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Dagny Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Dagny the value of the Dagny Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT THIRTEEN

## AVOIDANCE AND RECOVERY OF THE RANDI TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a) (1)(B) and 550(a) (as against Defendant Randi)

96. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

97. At the time Defendant Richard caused the Randi Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

98. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee may avoid the Randi Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Randi the value of the Randi Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT FOURTEEN

## AVOIDANCE AND RECOVERY OF THE RANDI TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(b) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW (as against Defendant Randi)

99. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

100. The Randi Transfers were made without fair consideration.

101. The Randi Transfers were not made in good faith or honestly, fairly, and openly.

102. At the time the Randi Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business

in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

103. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Randi Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Randi the value of the Randi Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT FIFTEEN

## AVOIDANCE AND RECOVERY OF THE WENDY TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a) (1)(B) and 550(a) (as against Defendant Wendy)

104. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

105. At the time Defendant Richard caused the Wendy Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

106. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee may avoid the Wendy Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Wendy the value of the Wendy Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT SIXTEEN

## AVOIDANCE AND RECOVERY OF THE WENDY TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(b) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW (as against Defendant Wendy)

107. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

108. The Wendy Transfers were made without fair consideration.

109. The Wendy Transfers were not made in good faith or honestly, fairly, and openly.

110. At the time the Wendy Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

111. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Wendy Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Wendy the value of the Wendy Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT SEVENTEEN

## AVOIDANCE AND RECOVERY OF THE R&D TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 548(a) (1)(B) and 550(a) (as against Defendant R&D)

112. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

113. At the time Defendant Richard caused the R&D Transfers to be made, the Debtor received less than reasonably equivalent value in exchange for such transfers, and (i) was insolvent or became insolvent as a result of said transfers, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

114. Accordingly, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee may avoid the R&D Transfers, and pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant R&D the value of the R&D Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT EIGHTEEN

## AVOIDANCE AND RECOVERY OF THE R&D TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(b) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW (as against Defendant R&D)

115. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

116. The R&D Transfers were made without fair consideration.

117. The R&D Transfers were not made in good faith or honestly, fairly, and openly.

118. At the time the R&D Transfers were made, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which he was engaged or was about to engage, and/or (iii) intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

119. Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the R&D Transfers, and pursuant to

11 U.S.C. § 550(a), the Trustee may recover from Defendant R&D the value of the R&D Transfers, in an amount to be proven at trial, together with interest thereon, for the benefit of the Debtor's estate.

## COUNT NINETEEN

## CLAIM FOR BREACH OF FIDUCIARY DUTIES
**(as against Defendant Mitchel)**

120. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

121. In his capacity as a general partner of Defendant Law Firm, Defendant Mitchel owed fiduciary duties to his partner in Defendant Law Firm, the Debtor, to exercise the care, diligence, good faith and compliance with applicable law that an ordinarily prudent person in a like position would exercise vis-à-vis his partner.

122. In breach of his fiduciary duties to the Debtor as aforesaid, Defendant Mitchel intentionally, knowingly, and without justification therefor, failed to provide the Debtor, despite the Debtor's proper demand therefor and entitlement thereto, with an accounting of the net profits earned by Defendant Law Firm and for turnover to the Debtor of Debtor's share of those net profits owing to the Debtor, including Debtor's share of such profits earned from legal service payments made by Amsterdam Apartments and Richard Mack, the clients whom the Debtor was responsible for bringing into Defendant Law Firm.

123. By virtue of Defendant Mitchel's breaches of his fiduciary duties to the Debtor as aforesaid, the Trustee is entitled to a judgment on behalf of the Debtor's estate against Defendant Mitchel in an amount to be determined at trial, together with interest thereon.

## COUNT TWENTY

## CLAIM FOR AN ACCOUNTING
**(as against Defendant Mitchel and Defendant Law Firm)**

124. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

125. Notwithstanding the Debtor's proper demand therefor and entitlement thereto, neither Defendant Mitchel nor Defendant Law Firm ever provided the Debtor with an accounting of the net profits earned by Defendant Law Firm and the amount of the fifty per cent (50%) share thereof owing to the Debtor, including Debtor's share of such profits earned from legal service payments made by Amsterdam Apartments and Richard Mack, the clients whom the Debtor was responsible for bringing into Defendant Law Firm.

126. Accordingly, the Trustee is entitled to a judgment and/or order of this Court directing Defendant Mitchel and Defendant Law Firm to provide the Trustee with an accounting of the net profits earned by Defendant Law Firm and the amount of the fifty per cent (50%) share thereof owing to the Debtor, including Debtor's share of such profits earned from legal service payments made by Amsterdam Apartments and Richard Mack, the clients whom the Debtor was responsible for bringing into Defendant Law Firm (collectively, the "Debtor's Share of the Net Profits").

## COUNT TWENTY-ONE

## CLAIM FOR TURNOVER OF THE DEBTOR'S SHARE OF THE NET PROFITS PURSUANT TO 11 U.S.C. § 542(a)
**(as against Defendant Mitchel and Defendant Law Firm)**

127. The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

128. The Debtor's Share of the Net Profits of Defendant Law Firm not previously paid to Debtor constitutes property of the Debtor's estate pursuant to 11 U.S.C. § 541(a).

129. Accordingly, the Trustee is entitled to a judgment and/or order pursuant to 11 U.S.C. § 542(a) directing Defendant Mitchel and Defendant Law Firm to turn over to the Trustee the entirety of the Debtor's Share of the Net Profits of Defendant Law Firm not previously paid to Debtor.

**WHEREFORE**, the Trustee as Plaintiff respectfully requests that this Court grant judgment for the Trustee on behalf of the Debtor's estate as follows:

1. On Count One, judgment against Defendant Richard in an amount to be determined at trial, currently estimated to be in excess of $1,000,000.00, together with interest thereon;

2. On Count Two, judgment against Defendant Richard in an amount to be determined at trial, currently estimated to be in excess of $1,000,000.00, together with interest thereon;

3. On Count Three, a determination that the Richard Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the Richard Transfers from Defendant Richard in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

4. On Count Four, a determination that the Richard Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the Richard Transfers from Defendant Richard in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

5. On Count Five, a determination that the Mitchel Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the Mitchel Transfers from Defendant Mitchel in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

6. On Count Six, a determination that the Mitchel Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the Mitchel Transfers from Defendant Mitchel in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

7. On Count Seven, a determination that the David Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the David Transfers from Defendant David in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

8. On Count Eight, a determination that the David Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the David Transfers from Defendant David in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

9. On Count Nine, a determination that the Patrick Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the Patrick Transfers from Defendant Patrick in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

10. On Count Ten, a determination that the Patrick Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the Patrick Transfers from Defendant Patrick in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

11. On Count Eleven, a determination that the Dagny Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the Dagny Transfers from Defendant Dagny in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

12. On Count Twelve, a determination that the Dagny Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the Dagny Transfers from Defendant Dagny in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

13. On Count Thirteen, a determination that the Randi Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the Randi Transfers from Defendant Randi in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

14. On Count Fourteen, a determination that the Randi Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the Randi Transfers from Defendant Randi in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

15. On Count Fifteen, a determination that the Wendy Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the Wendy Transfers from Defendant Wendy in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

16. On Count Sixteen, a determination that the Wendy Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the Wendy Transfers from Defendant Wendy in

an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

17. On Count Seventeen, a determination that the R&D Transfers are subject to avoidance under 11 U.S.C. § 548(a)(1)(B), and judgment for the recovery of the R&D Transfers from Defendant R&D in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. §550(a);

18. On Count Eighteen, a determination that the R&D Transfers are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery of the R&D Transfers from Defendant R&D in an amount to be determined at trial, together with interest thereon, pursuant to 11 U.S.C. § 550(a);

19. On Count Nineteen, judgment against Defendant Mitchel in an amount to be determined at trial, together with interest thereon;

20. On Count Twenty, a judgment and/or order of this Court directing Defendant Mitchel and Defendant Law Firm to provide the Trustee with an accounting of the Debtor's Share of the Net Profits of Defendant Law Firm;

21. On Count Twenty-One, a judgment and/or order pursuant to 11 U.S.C. § 542(a) directing Defendant Mitchel and Defendant Law Firm to turn over to the Trustee the entirety of the Debtor's Share of the Net Profits of Defendant Law Firm not previously paid to Debtor; and

22. For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 23, 2013

SQUIRE SANDERS (US) LLP
*Special Litigation Counsel to*
*Robert L. Geltzer, as Chapter 7 Trustee*

By: /s/ Robert A. Wolf

Robert A. Wolf, Esq.
robert.wolf@squiresanders.com
Andrea Fisher, Esq.
andrea.fisher@squiresanders.com
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Telephone: (212) 872-9800



159819.3/103032.00061